**Stephen Nichols**
**VSB No. 32443**
**COOTER, MANGOLD, DECKELBAUM**
**& KARAS, LLP**
**5301 Wisconsin Avenue, NW**
**Suite 500**
**Washington, DC 20015**
**PHONE:    (202) 537-0700**
**FAX:        (202) 364-3664**

*Attorneys for Richard J. Hindin*

### UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
### (Alexandria Division)

| | |
|---|---|
| In re: | : |
| | : |
| RICHARD J. HINDIN, | : Case No. 09-19741-BFK |
| | : (Chapter 11) |
| Debtor. | : |
| | : |

### FIRST AND FINAL FEE APPLICATION
### OF COOTER, MANGOLD, DECKELBAUM & KARAS, LLP FOR
### COMPENSATION AND REIMBURSEMENT OF EXPENSES
### FOR SERVICES RENDERED AS DEBTOR'S COUNSEL FOR THE PERIOD
### NOVEMBER 27, 2009 THROUGH OCTOBER 21, 2011

Cooter, Mangold, Deckelbaum & Karas, LLP ("Cooter Mangold"), counsel for the above-referenced debtor and debtor in possession (the "Debtor") hereby applies (the "Final Fee Application") for the entry of a final order, substantially in the form of the attached proposed order (the "Order"), allowing (a) fees in the amount of $231,320 for the reasonable and necessary services Cooter Mangold has rendered the Debtor and (b) the actual and necessary expenses that

Cooter Mangold has incurred in the amount of $2,318.17 for the period November 27, 2009 through October 21, 2011 (the "Fee Period") pursuant to sections 330 and 331 of the Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rule 2016-1 of the Local Rules of the Bankruptcy Court for the Eastern District of Virginia (the "Local Rules") and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 (the "Trustee Guidelines"). In support of the Final Fee Application, Cooter Mangold respectfully states the following:

**Background**

1. The Debtor commenced the above-captioned case by filing a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on November 27, 2009 (the "Petition Date"). The Debtor subsequently operated his business and managed his property and assets as a debtor in possession during the Fee Period pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee, examiner or statutory committee was ever appointed in this chapter 11 case. This Court ultimately confirmed the Debtor's Third Amended Plan of Reorganization (the "Plan") by an order entered on September 19, 2011.

2. The Debtor is a businessman and investor with extensive real property holdings and business interests. He owns a residence located at 407 Chain Bridge Road, McLean, VA and an adjoining property located at 405 Chain Bridge Road, McLean, VA. Additionally, he owns a beach-front property located in North Bethany, DE. Finally, he owns or co-owns two smaller condominium properties located in Montgomery County, Maryland. The scheduled value of these assets exceeded $13 million. The 407 Chain Bridge Road property is encumbered by a $2.9 million deed of trust in favor of G.M.A.C., as well as an indemnity deed of trust securing an indebtedness of Chicken Out Rotisserie, Inc. ("CORI") of approximately $6 million to Branch

Banking & Trust Co. ("BB&T"). The Debtor holds a majority equity interest in CORI. The 407 Chain Bridge Road property was scheduled as worth approximately $8 million. The 405 Chain Bridge Road property was scheduled as worth approximately $1.2 million, and is subject to a reverse mortgage with a current balance of approximately $400,000.00. The North Bethany, DE property was scheduled as worth approximately $4 million and is encumbered by three liens in favor of National City Mortgage and Eagle Bank securing a total indebtedness of over $3.5 million. The equity in the Debtor's interests in the Maryland properties totals perhaps $375,000.00. In addition to his real properties and his equity interest in CORI, the Debtor also holds stock interests in a company known as Regenerx Biopharmaceuticals, Inc. ("Regenerx") worth approximately $150,000.00, as well as stock in various other ventures with little or no value.

3. The Debtor's bankruptcy filing was occasioned by his personal guaranty of the purchase of a residence in Park City, Utah (the "Park City Residence") by his son, Lee Hindin, and daughter in law, Karen Hindin (collectively, "Mr. and Mrs. Hindin"). Mr. and Mrs. Hindin purchased the Park City Residence from an entity known as Split Timber Holdings, LLC ("Split Timber"). Split Timber is wholly owned by former San Francisco 49ers quarterback and television personality Steve Young ("Young"). The purchase price was $6.25 million. Mr. and Mrs. Hindin made a down payment of $750,000.00 and executed a promissory note for the balance of $5.5 million (the "Note"). The Debtor guaranteed the Note. Soon thereafter, disputes arose between Mr. and Mrs. Hindin and Split Timber due to what Mr. and Mrs. Hindin felt were defects associated with the house. Mr. and Mrs. Hindin believe that it would cost approximately $300,000.00 to remedy these defects and prepare the house for sale. Due to their dissatisfaction, Mr. and Mrs. Hindin refused to make payments on the Note, after which Split Timber sued the

Debtor on the guaranty.

4. Split Timber thereafter obtained a default judgment against the Debtor in Utah state court for the $5.5 million balance under the Note, plus over $1.1 million in asserted unpaid interest, penalties and attorneys' fees. The Utah judgment was then domesticated in Arlington County, Virginia, and in various Delaware and Maryland jurisdictions.

5. The Debtor's bankruptcy was filed to prevent Split Timber from enforcing its judgment to the detriment of other creditors, to confirm a plan of reorganization and to substitute the Debtor's obligations under that plan in place of the existing rights of the Debtor's pre-petition creditors because, as described above, the actions of one of those creditors threatened to consume whatever value remained as of the Petition Date in the Debtor's property.

6. On May 25, 2010, approximately 6 months after the Petition Date, the Debtor filed a proposed plan of reorganization, Docket No. 59, as amended (the "First Plan"). In essence, the First Plan proposed to liquidate the Debtor's Arlington, Virginia properties and to distribute the net proceeds of that liquidation to creditors, and to pay, out of the Debtor's future earnings, over time and with interest, the value of his remaining non-exempt property to creditors.

7. The Debtor's attempts to obtain confirmation of the First Plan were complicated by his ownership of CORI. CORI had incurred significant losses over a long period of time, as a result of which the Debtor had incurred tax losses and had not filed tax returns for several years. Through no fault of Cooter Mangold's, it took a period of approximately four months to complete the missing tax returns and therefore pave the way for confirmation of the First Plan. More significantly, however, while CORI had for a long time experienced large losses, it was a substantial local restaurant chain with several store locations and Split Timber, in particular,

believed that the Debtor's interest in CORI might have value in excess of the payments to creditors proposed by the Debtor in the First Plan, or that CORI might be reorganized in a manner that could be profitable to the Debtor. Split Timber commenced extensive litigation, first under Fed. R. Bankr. P. 2004 and then, after objecting to confirmation of the First Plan, under Fed. R. Bankr. P. 7026-7034, of both the Debtor and several third parties, designed to discover whether there was any value to the Debtor's stock in CORI and in the other closely-held entities in which the Debtor held an interest.

8. Convinced that he could turn CORI's operations around, the Debtor attempted to "sweeten the pot" for his personal creditors – and thereby offer a further incentive to confirm the First Plan – by negotiating with CORI's sales tax creditors to waive their priority claims against the estate for the Debtor's personal liability on the sales taxes, and look solely to CORI for recovery of the sales taxes, which exceeded $1 million. Shortly before the December 16, 2010 confirmation hearing on the First Plan, the tax creditors accepted this proposal.

9. Split Timber was the only party that objected to confirmation of the First Plan and was also the only party that voted against it. Notwithstanding that several impaired classes accepted the Plan and that no other creditor voted against the First Plan, Split Timber's rejection of the First Plan prevented acceptance of the First Plan by the class that it controlled. This in turn required the Bankruptcy Court to construe the BAPCPA revisions to the absolute priority rule of section 1129 (b)(2)(B)(ii) applicable to individual chapter 11 debtors in what is believed to be a case of first impression in this District. On January 11, 2011 (Docket No. 120) the Bankruptcy Court ruled that, while the First Plan was otherwise confirmable, the fact that the Debtor would retain some non-exempt property under the First Plan rendered it non-confirmable. Confirmation of the First Plan was therefore denied, with leave to amend.

10. Thereafter, the Debtor and Split Timber engaged in negotiations in an attempt to settle their differences. These negotiations did not ultimately bear fruit. On June 13, 2011, the Debtor filed the initial version of the Plan. To avoid the effect of the absolute priority rule on the assumption that Split Timber would once again oppose confirmation, the Plan provided for the liquidation of all of the Debtor's non-exempt Property and distribution of the proceeds according to the priorities of the Bankruptcy Code. Unfortunately, in the period since the confirmation hearing on the First Plan, CORI's fortunes significantly deteriorated and it became impracticable to repeat the earlier agreement with CORI's tax creditors not to pursue their claims against the Debtor's estate. Ultimately, CORI filed its own chapter 11 bankruptcy case in the United States Bankruptcy Court for the District of Maryland. Once again, Split Timber filed a confirmation objection, which was ultimately resolved. Otherwise, the Plan was again overwhelmingly accepted by creditors. As noted above, the Plan was confirmed by the Bankruptcy Court on September 19, 2011. The Plan will likely result in a seven-figure distribution to creditors.

**Retention of and Continuing Disinterestedness of Cooter Mangold**

11. The Debtor filed an Application for Authority to Employ Cooter, Mangold, Deckelbaum & Karas, LLP (the "Application") on the Petition Date. Docket No. 6. No objections to the Application were filed and the Application was approved by the Court at a hearing held on January 5, 2010. Docket No. 28. Thereafter, counsel BOP'd a proposed order but apparently through an oversight this order was never entered. Concurrent with the filing of this Application a separate proposed order has been endorsed by the US Trustee and is being uploaded for entry. This proposed order, consistent with the Application and this Court's prior ruling, authorizes the Debtor to compensate Cooter Mangold on the terms described on the Debtor's Application, which provided for hourly billing by Cooter Mangold at its normal hourly

rates, which were disclosed in the Application, and to reimburse Cooter Mangold for its actual and necessary out-of-pocket expenses incurred, subject to application to this Court.

12. As disclosed in the Verified Statement of Dale A. Cooter, Esq. In Support of Debtor's Application for Authority to Employ Cooter, Mangold, Deckelbaum & Karas, LLP filed on November 30, 2009, as amended by the Amended Verified Statement of Dale A. Cooter, Esq. In Support of Debtor's Application for Authority to Employ Cooter, Mangold, Deckelbaum & Karas, LLP filed on July 9, 2010 [Docket No. 6, Exhibit 1 and Docket No. 68] (collectively, the "Verified Statement"), Cooter Mangold does not hold or represent any interest adverse to the Debtor's estate and is a "disinterested person" as that term is defined in section 101 (14) of the Bankruptcy Code, as modified by section 1107 (b) of the Bankruptcy Code.

13. In the Verified Statement, Cooter Mangold has disclosed its connections to parties in interest. Cooter Mangold performed the services for which it is seeking compensation on behalf of and for the Debtor and his estate, and not on behalf of any committee, creditor or other entity.

14. Cooter Mangold has received no payment and no promises for payment from any source other than the Debtor and his estate on the terms described in the Application for services rendered or to be rendered in any capacity whatsoever in connection with this chapter 11 case.

15. Pursuant to Fed. R. Bankr. P. 2016 (b), Cooter Mangold has not shared, nor has it agreed to share (a) any compensation it has received or may receive with another party or person other than with the partners, counsel and associates of Cooter Mangold or (b) any compensation another person or party has received or may received.

16. As of the date herein, Cooter Mangold has received no payments from the Debtor for fees and expenses incurred by Cooter Mangold during this case.

**Reasonable and Necessary Services Rendered by Cooter Mangold**

17.     Cooter Mangold has advised and represented the Debtor in connection with matters arising in the performance of his duties as debtor and debtor in possession. Furthermore, Cooter Mangold has: (a) prepared and filed various pleadings, motions and other papers; (b) consulted with other professionals regarding the property of the estate; c) represented the Debtor in litigation commenced by creditors; (d) appeared before this Court during hearings regarding this case; and (e) performed all of the other professional services described in this Final Fee Application.

18.     The rates described herein are Cooter Mangold's hourly rates for services of this type provided during the Fee Period to other clients. Based on these rates and the services performed by each individual, the total reasonable value of such services during the Fee Period is $239,330. The Cooter Mangold attorneys and paraprofessionals expended a total of 484.5 hours working on this case during the Fee Period.

19.     Under section 330 of the Bankruptcy Code, the Court may award counsel to the Debtor reasonable compensation for actual, necessary services rendered based on the nature, extent and value of the services rendered, time spent on such services and the cost of comparable services outside of a bankruptcy case. Additionally, the Court may award reimbursement for actual, necessary expenses. Courts typically use the "lodestar" approach, which involves an analysis of the number of service hours reasonably devoted to the case multiplied by the attorneys' hourly rates when evaluating applications for professional compensation. The following specific "lodestar" facts set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) were adopted by the Fourth Circuit in *Barber v. Kimbrells, Inc.*, 577 F.2d 216, 222 (4th Cir. 1978) and *Anderson v. Morris*, 658 F.2d 246, 249 (4th Cir. 1981):

  (a)  the time and labor required;

  (b)  the novelty and difficulty of the questions;

  c)  the skill requisite to perform the legal service properly;

  (d)  the preclusion of other employment by the attorney due to acceptance of the case;

  (e)  the customary fee;

  (f)  whether the fee is fixed or contingent;

  (g)  time limitations imposed by the client or the circumstances;

  (h)  the amount involved and the results obtained;

  (i)  the experience, reputation and ability of the attorneys;

  (j)  the undesirability of the case;

  (k)  the nature and length of the professional relationship with the client; and

  (l)  awards in similar cases.

*Johnson*, 488 F.2d at 717-719.

20. Cooter Mangold believes that the services rendered to the Debtor were both reasonable and necessary in view of the size, difficulty and contested nature of this case. Cooter Mangold has thinly staffed this case and has otherwise worked to avoid duplication of services. Cooter Mangold believes the fees requested satisfy the *Johnson* factors set forth above.

21. The attached <u>Exhibit 1</u> provides a summary of the services performed by Cooter Mangold during the Fee Period.

22. The attached <u>Exhibit 2</u>: (a) identifies the attorneys and paraprofessionals who rendered services in each project category; (b) describes each activity or service that each

individual performed; and (c) states the number of hours (in increments of one-tenth of an hour) spent by each individual providing the services.

### Reasonable and Necessary Services by Cooter Mangold – Categorized by Subject Matter

23.     The professional services that Cooter Mangold has performed during the Fee Period are grouped into the titled categories of the subject matters described in paragraphs 24 through 31 below (each one, a "Category").

24.     Case Administration (96.4 Total Hours = $46,591.50).  This Category includes all administrative activities performed by Cooter Mangold during the approximately two-year duration of the Fee Period, including: (a) drafting and reviewing all pleadings filed with the Court; (b) reviewing, revising and electronically filing pleadings and submitting orders on behalf of the Debtor; (c) communicating with and responding to numerous inquiries from creditors, professionals, the Office of the US Trustee, the Court and other interested parties regarding the status of the case and matters arising therein; (d) preparing for and attending hearings in the case; (e) meeting with and advising the Debtor regarding his duties under the Bankruptcy Code, Bankruptcy Rules and Local Rules of the Court; (f) managing the Debtor's case and formulating strategy for the case; and, (g) complying with applicable notice and service requirements.

25.     Plan/Disclosure Statement (213.3 Total Hours = $106,856).  This Category includes (a) all internal meetings of attorneys at Cooter Mangold, meetings with the Debtor and meetings with creditors designed to formulate or discuss a plan of reorganization in the case, and meetings with the same parties regarding confirmation of the First Plan and Plan, and approval of their related Disclosure Statements; (b) meetings with representatives of CORI and review of its financial reporting to determine and discuss its impact on any plan in the Debtor's case; (c) drafting and revising the First Plan and the Plan; (d) negotiations with creditors – principally

Split Timber – regarding the First Plan and Plan; (e) participating in litigation and discovery – including several depositions, interrogatories and document production, as well as responding to the same – that arose over or related to the First Plan and Plan; and, (f) preparing for and appearing at the confirmation hearings on the First Plan and Plan.

26.     Business Operations (26.2 Total Hours = $13,076).  This Category consists primarily of time spent by Cooter Mangold professionals reviewing CORI's business operations and financial performance to determine the effect of CORI's fortunes upon the administration of this case and the terms of the First Plan and Plan.  Additionally, from time to time the feasibility of a possible sale of CORI has been discussed and studied, which, if it came to fruition, could have potentially resulted in a return on account of either the Debtor's stock interest in CORI or, more likely, his claims against CORI.

27.     Meeting of Creditors (9.7 Total Hours = $ 4,753).  Cooter Mangold expended a moderate amount of time in meeting with the Debtor and the US Trustee at the initial debtor interview shortly after the Petition Date and preparing the Debtor for the meeting of creditors and appearing with the Debtor at the meeting of creditors.

28.     Litigation (96.6 Total Hours = $47,577.50).   This Category includes time spent reviewing documents, communicating with the Debtor regarding various motions, and attending hearings in all litigation matters unrelated to the First Plan or Plan.  These matters included a 2004 motion filed by Split Timber, four lift-stay motions filed by various creditors, one dischargeability action and various smaller matters.

29.     Asset Analysis and Sales (17 Total Hours = $9,213.50).  This Category includes time conferring with the Debtor regarding the disposition of various items of personal property, preparing a motion to sell property out of the ordinary course of business and appearing in Court

at the hearing on that motion.

30.    <u>Professional Retention/Fee Applications</u> (18.9 Total Hours = $9,028.50).  This Category includes the time expended by Cooter Mangold in connection with the retention and compensation of professionals in the case.  During the course of the case Cooter Mangold prepared an application for its retention, an application for the retention of accountants and applications for the retention of two real estate agents, and also appeared in court at the hearings on those applications.

31.    <u>Claims Analysis</u> (6.6 Total Hours = $ 3,334.00).  This Category includes the modest amount of time spent by Cooter Mangold in reviewing claims filed in the case, corresponding with creditors and their attorneys regarding filed claims and discussing related matters with the Debtor.

**Actual and Necessary Expenses**

32.    Accompanying Exhibit 3 is a summary which includes the expenses incurred during the Fee Period for which reimbursement is sought.  These disbursements comprise the requested sum for Cooter Mangold's out-of-pocket expenses, totaling $2,318.17.  It is Cooter Mangold's policy to charge its clients in all areas of practice the amounts incurred by Cooter Mangold for identifiable, non-overhead expenses incurred in connection with the representation of the relevant client that would not have been incurred except for the representation.  Examples of such expenses include postage, overnight mail, courier delivery, computer-assisted legal research, photocopying, printing, out-going facsimile transmissions, airfare an lodging.  In addition, Cooter Mangold's normal policy is to charge clients a retrieval fee of $20 for copying of electronically-filed pleadings and a fee for optical scanning of incoming correspondence, all of which are then loaded into its integrated, searchable document management system.  These

charges are listed on the Exhibit 3 expense report, but reimbursement for these charges is not being sought herein as Cooter Mangold does not believe these charges are not reimbursable under the US Trustee Guidelines. Of the total $5,824.60 in expenses listed on Exhibit 3, reimbursement is sought for only the $2,318.17 charges representing either copying charges, postage costs or out of pocket expenses

### Representations/Billing Discretion

33. As shown on Exhibits 1 and 2, the total time spent by Cooter Mangold during the Fee Period was 484.5 hours, including 473.5 attorney hours and 11 paralegal hours, which represents fees of $239,330.00.

34. In reviewing its time expended, Cooter Mangold has voluntarily reduced its fees requested for a number of items. First, three hearings on the disclosure statement for the First Plan were continued because the Debtor had not previously filed his prepetition tax returns. While this was no fault of Cooter Mangold, the firm is not seeking compensation for the 9 hours spent in court at the continued hearings, resulting in a reduction in the fees sought of $4,410. Second, during the first part of the Fee Period, Cooter Mangold did not employ a paralegal familiar with the operation of the bankruptcy computer program utilized by Cooter Mangold to prepare bankruptcy schedules and related documents, as a result of which attorney time was expended inputting data to prepare schedules and amended schedules. A total of approximately 12 hours were spent preparing these documents, and Cooter Mangold has exercised billing discretion in seeking compensation for this time at a paralegal rate of $190 per hour, resulting in a further reduction of the fees sought of $3,600.

35. After applying these voluntary reductions in fees from the amounts listed on Exhibits 1 and 2, Cooter Mangold requests allowance and payment of outstanding amounts of

fees of $231,320 and reimbursement of expenses of $2,318.17. The blended attorney hourly rate for the requested fees is $485; the blended hourly rate for all professionals is $477.

WHEREFORE, Cooter Mangold respectfully requests the entry of an order in the proposed form

    a.    approving this Final Fee Application;

    b.    granting final approval of its requested fees of $231,320 and reimbursement of expenses of $2,318.17 as an administrative expense herein;

    c.    authorizing and directing the Debtor to pay such administrative expenses out of the proceeds realized from the sale of any assets pursuant to the terms of the Final Plan without the necessity of a further order from the Court; and

    d.    granting such other and further relief as is just and proper.

Date:   December 6, 2011.

> Respectfully submitted,
> RICHARD J. HINDIN
> By Counsel

COOTER, MANGOLD, DECKELBAUM & KARAS, LLP


By:   /s/ Stephen Nichols
      Nelson Deckelbaum
      Md. Fed. Bar No. 01249
      Stephen Nichols
      Va. Bar No. 32443
      5301 Wisconsin Avenue, NW
      Suite 500
      Washington, DC  20015


PHONE:   (202) 537-0700
FAX:     (202) 364-3664

## NOTICE OF MOTION

*Your rights may be affected*.  You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case.  (If you do not have an attorney, you may wish to consult one).  If you do not want the court to grant the relief sought in the Motion, or if you want the court to consider your views, then on or before **January 3, 2012**, you or your attorney must:

1. File with the Court, at the address shown below, a written response pursuant to Local Bankruptcy Rule 9013 and 1007-1 (D).  If you mail your response to the court for filing, you must mail it early enough so that the court will receive it on or before the date stated above.  Your mailing should be directed to:

    Clerk of the Court
    U.S. Bankruptcy Court
    200 S. Washington Street
    Alexandria, VA 22314

2. You must also mail a copy to:

    Stephen Nichols, Esq.
    Cooter, Mangold, Deckelbaum & Karas, LLP
    5301 Wisconsin Avenue, NW
    Suite 500
    Washington, DC 20015

    Office of the US Trustee
    115 South Union Street
    Alexandria, VA 22314

3. You must also attend the hearing to consider the relief sought in the Motion in addition to filing a written objection.  If you fail to timely file a written response and to attend the hearing even if a response is timely filed, the Court may consider any objection you may have waived and enter an Order granting the relief requested.  **The hearing is scheduled for January 10, 2012 at 11:00 a.m. at the United States Bankruptcy Court, Courtroom I, 200 S. Washington Street, Alexandria, VA, 22314.**

                                                                /s/ Stephen Nichols
                                                                Stephen Nichols

CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that on this 6th day of December, 2011 a copy of the foregoing FIRST AND FINAL FEE APPLICATION together with all exhibits and the proposed order was mailed, via first class mail, postage prepaid, to the following:

    Office of the U.S. Trustee
    115 South Union Street
    Suite 210
    Alexandria, VA 22314

and to the creditors and other parties in interest listed on the attached Service List.


                                        /s/ Stephen Nichols
                                        Stephen Nichols

Split Timber Holdings, LP
c/o James Scroll, Esq.
Bean Kinney & Korman
2300 Wilson Boulevard, 7th Floor
Arlington, VA 22201

Sysco Foods
8000 Dorsey Run Road
Jessup, MD 20794

Sam LeBauer
c/o Robert Marino, Esq.
Redmon, Peyton & Braswell, LLP
510 King Street, Suite 301
Alexandria, VA 22314

Eagle Bank
7815 Woodmont Avenue
Bethesda, MD 20814

Wachovia Bank
PO Box 96074
Charlotte, NC 28296-0074

Silver Freedman & Taff, LLP
Attn: Sydney Silver, Esq.
3299 K Street, NW
Suite 100
Washington, DC 20007

Chase Visa
PO Box 15153
Wilmington, DE 19886

Neiman Marcus
PO Box 5235
Carol Stream, IL 60197

John D. Clayborne, Inc.
100 West Jefferson Street
Falls Church, VA 22046

Arlington County Treasurer
PO Box 1780
Merrifield, VA 22116-1780

GMAC
Payment Processing Center
PO Box 660208
Dallas, TX 75266-0208

National City Mortgage
PO Box 5570
Cleveland, OH 44101-0570

National City Mortgage
PO Box 1820
Dayton, OH 45401

Travelers Insurance Company
c/o Christoper Anzidei, Esq.
Watt, Tieder, Hoffar & Fitzgerald
8405 Greensboro Drive, Suite 100
McLean, VA 22102

World Alliance Financial
3 Huntington Quadrangle
Suite 201 N
Melville, NY 11747

BB&T
Attn: Mr. Derek T. Whitwer
7220 Wisconsin Avenue
4th Floor
Bethesda, MD 20814

PNC Mortgage
3232 Newmark Drive
Miamisburg, OH 45342

GMAC Mortgage, LLC
1100 Virginia Drive
PO Box 8300
Ft. Washington, PA 19034

Christine Hindin
c/o Madeline A. Trainor, Esq.
Cyron & Miller, LLP
100 N. Pitt Street, Suite 200
Alexandria, VA 22314

Office of the US Trustee
115 South Union Street, Suite 210
Alexandria, VA 22314

US Securities & Exchange Commission
701 Market Street
Philadelphia, PA 19106

Internal Revenue Service
400 N. 8th Street, Box 76
Stop Room 898
Richmond, VA 23219

Trenita Jackson-Stewart, Esq.
Shapiro & Burson, LLP
236 Clearfield Avenue, Suite 215
Virginia Beach, VA 23462

Chase Bank USA, NA
PO Box 15145
Wilmington, DE 19850

Wachovia Bank
PO Box 13765-R4057-01P
Roanoke, VA 24037-3765

Arlington County Treasurer
2100 Clarendon Boulevard
#217
Arlington, VA 22201

Eagle Bank
c/o Bryn H. Sherman, Esq.
4800 Montgomery Lane
Suite 900
Bethesda, MD 20814

Discover Bank/DFS Services LLC
PO Box 3025
New Albany, OH 43054

Desiderio Camacuari
4614 Deming Avenue
Alexandria, VA 22312

BB&T
c/o Michael J. Lichtenstein, Esq.
Shulman Rogers et al.
12505 Park Potomac Ave., 6th Floor
Potomac, MD 20854

| | | |
|---|---|---|
| PNC Bank<br>PO Box 94982<br>Cleveland, OH 44101 | ColomboBank, FSB<br>c/o Robert Greenberg, Esq.<br>Friedlander Misler, LLP<br>1101 17th Street, NW, Suite 700<br>Washington, DC 20036 | Riggs Counselman et al.<br>c/o Tovah Eichhorn, Esq.<br>Kazlow & Fields, LLC<br>11605 Crossroads Cir., Suite J<br>Baltimore, MD 21220 |
| Robert K. Coulter, Esq.<br>Assistant US Attorney<br>2100 Jamieson Avenue<br>Alexandria, VA 22314 | Christina Zechman Brown, Esq.<br>Office of City Atty<br>301 King Street, Suite 1300<br>Alexandria, VA 22314 | Commonwealth of Va., Dept of Tax<br>Mark Ames, Esq.<br>T.A.C.S., PC<br>PO Box 71476<br>Richmond, VA 23255 |
| State of Maryland<br>Sylvia J. Brokos, Esq.<br>Office of the Comptroller<br>301 W. Preston St., Room 410<br>Baltimore, MD 21201 | Ms. Pamela Grube<br>RMS<br>2727 Spring Creek Drive<br>Spring, TX 77373 | Melissa Goode, Esq.<br>Glasser & Glasser, P.L.C.<br>Crown Center Building<br>Suite 600<br>Norfolk, VA 23510 |